IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

```
DORTHEA HALL,                    §
                                 §
          Plaintiff,             §
                                 §
VS.                              §   NO. 4:13-CV-188-A
                                 §
LOCKHEED MARTIN CORPORATION,     §
                                 §
          Defendant.             §
```

<u>MEMORANDUM OPINION</u>
and
<u>ORDER</u>

Came on for consideration the motion for summary judgment filed in the above-captioned action by defendant, Lockheed Martin Corporation. As of the date of the signing of this memorandum opinion and order, plaintiff, Dorthea Hall[1], has filed nothing in response. Having now considered all of the parties' filings, the entire summary judgment record, and the applicable legal authorities, the court concludes that the motion should be granted.

---

[1] As defendant points out, plaintiff's name seems to have been misspelled in the caption of this action and throughout her first amended complaint. Documents found in defendant's appendix in support of its motion indicate that plaintiff's first name is "Doretha," not "Dorthea." However, as summary judgment is being granted in favor of defendant and this action is being dismissed, the court declines to investigate the issue any further.

I.

## Plaintiff's Claims

Plaintiff initiated this action by filing her original petition against defendant in the District Court of Tarrant County, Texas, 153rd Judicial District, as Cause No. 153-264269-13. Defendant removed the action to this court within 30 days of being served, alleging that this court has federal question jurisdiction under 28 U.S.C. § 1331 and diversity jurisdiction under 28 U.S.C. § 1332. Pursuant to the court's order, plaintiff filed an amended complaint, alleging that defendant was the administrator of the employee benefit plan of which plaintiff's husband, Emmett Hall, Jr. ("Mr. Hall"), was a participant and plaintiff was the beneficiary. According to the amended complaint, defendant accepted a fraudulent power of attorney from Mr. Hall's daughter, Sherry Hall, and failed to pay the plan funds to plaintiff, in violation of defendant's duties under the plan and under common law. Plaintiff seeks damages in the amount of $60,421.95, attorney's fees, and costs associated with prosecution of this matter.

II.

## The Summary Judgment Motion

Defendant argues for summary judgment on the grounds that all of plaintiff's state law claims are preempted by the Employee Retirement Income Security Act of 1974 ("ERISA"). Defendant also argues that because there were no funds to disburse to plaintiff after Mr. Hall's death, it did not breach the terms of the Plan. Further, defendant argues that it satisfied its fiduciary duties under the Plan when it honored Mr. Hall's request to revoke plaintiff's power of attorney and recognize the power of attorney given to Sherry Hall.

III.

## Undisputed Facts[2]

Defendant is the plan sponsor and plan administrator for the Lockheed Martin Corporation's Hourly Employee's Savings Plan Plus (the "Plan"), which is regulated by ERISA. Plaintiff's husband, Mr. Hall, who was employed by defendant, was a Plan participant. Plaintiff and Mr. Hall were married on August 6, 2002, and plaintiff was designated Mr. Hall's beneficiary under the Plan.

---

[2] The undisputed facts are taken from defendant's appendix in support of its motion for summary judgment. Because plaintiff failed to respond to the motion, the court is permitted to accept defendant's summary judgment evidence as undisputed. Bookman v. Shubzda, 945 F. Supp. 999, 1002 (N.D. Tex. 1996); see also Fed. R. Civ. P. 56(e); Eversley v. MBank Dallas, 843 F.2d 172, 174 (5th Cir. 1988).

3

Defendant's Employee Service Center received from Mr. Hall a Durable Power of Attorney for Financial Management dated September 6, 2007, appointing plaintiff as Mr. Hall's attorney-in-fact.  When Mr. Hall retired on December 1, 2009, he became eligible to take a distribution from the Plan and also began receiving monthly payments under the Lockheed Martin Retirement Plan for Certain Hourly Employees (the "Pension Plan").

On November 1, 2010, the Employee Service Center received from Mr. Hall a Statutory Durable Power of Attorney dated September 22, 2010, appointing his daughter, Sherry Hall, as his attorney-in-fact.  On November 30, 2010, the Employee Service Center received a letter from Sherry Hall explaining that she had been asked by Mr. Hall to be appointed power of attorney because plaintiff had allowed Mr. Hall's life and medical insurance to lapse and had not been paying any of his medical expenses, even though she was receiving his Social Security and pension checks. Sherry Hall also provided documentation showing that Mr. Hall had been repeatedly evicted from nursing facilities due to non-payment and that each time, plaintiff would move Mr. Hall to a different facility with the promise that Medicare/Medicaid would pay the cost, even though plaintiff knew that Mr. Hall did not qualify.  Sherry Hall said that she had used her power of attorney to obtain the remainder of Mr. Hall's savings and

4

provided proof that she had begun paying Mr. Hall's outstanding medical and nursing home expenses.

The Employee Service Center then received requests from plaintiff and from Sherry Hall to change the direct deposit information for Mr. Hall's pension payments.  The Pension Plan record keeper informed defendant that there could only be one power of attorney and that Mr. Hall needed to revoke the other one.  At that point, Robin Villanueva ("Villanueva"), defendant's Associate General Counsel, began working to determine the valid power of attorney for Mr. Hall.

On or about December 8, 2010, Villanueva received a call from Detective M.E. Anderson ("Det. Anderson") of the Fort Worth Police Department Major Crime Division/Fraud Unit, informing Villanueva that plaintiff had made a claim against Sherry Hall for financial fraud regarding Mr. Hall's pension payments.  Det. Anderson told Villanueva that he had spoken with Mr. Hall, Sherry Hall, and plaintiff and had visited Mr. Hall at the nursing home where he was staying.  He indicated that although Mr. Hall was old and frail, he was not delusional.  Det. Anderson had learned that plaintiff had been spending Mr. Hall's pension payments on herself and her daughter and had not been paying the nursing homes for Mr. Hall's care.  Consequently, Mr. Hall had been repeatedly evicted from those homes.  Further, when Det. Anderson

looked at Sherry Hall's records, he learned that Sherry Hall was using the funds she received to pay Mr. Hall's nursing home expenses.   Det. Anderson told Villanueva that he was trying to convince plaintiff and Sherry Hall to set up a trust for Mr. Hall's funds and that in the meantime, Mr. Hall's nursing home expenses would be paid if defendant honored the power of attorney given to Sherry Hall.   Villaneuva explained that in order to honor the power of attorney for Sherry Hall, Mr. Hall would need to revoke the one given to plaintiff.   Det. Anderson said that he would convey that information to Sherry Hall.

On December 20, 2010, the Employee Service Center received a document signed by Mr. Hall revoking the power of attorney given to plaintiff and requesting defendant to recognize the one given to Sherry Hall.   Based on the revocation of the power of attorney for plaintiff, the communications from Sherry Hall, and the call with Det. Anderson, Villanueva made the decision, on December 21, 2010, that defendant should honor only the power of attorney for Sherry Hall.

On January 14, 2011, defendant received from Sherry Hall the same letter and documentation that she had sent to the Employee Service Center on November 30, 2010.   Sherry Hall also included a note explaining that plaintiff had made a claim that Sherry Hall's power of attorney was fraudulent and that Det. Anderson

had investigated the matter and cleared Sherry Hall of the allegations.

On January 17, 2011, the Employee Service Center sent a letter to plaintiff informing her that Mr. Hall had revoked the power of attorney given to her and requested that defendant recognize the power of attorney given to Sherry Hall.

On or about January 21, 2011, Sherry Hall requested that the funds in Mr. Hall's Plan account be sent to her. Because Mr. Hall was entitled under Article VII(1) of the Plan to withdraw the money in his account, the Plan issued a check dated February 14, 2011, payable to Emmett Hall, Jr. c/o Sherry Hall, in the amount of $48,337.56, which represented Mr. Hall's entire account balance, less the required withholdings.

On April 17, 2011, Mr. Hall passed away, and on April 25, 2011, the Employee Service Center sent plaintiff a letter providing her a listing of the benefits that had been determined based on Mr. Hall's reported date of death. Because no funds were in Mr. Hall's Plan account upon his death, plaintiff did not receive any funds as beneficiary of the Plan.

IV.

## Applicable Summary Judgment Principles

Rule 56(a) of the Federal Rules of Civil Procedure provides that the court shall grant summary judgment on a claim or defense if there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986). The movant bears the initial burden of pointing out to the court that there is no genuine dispute as to any material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323, 325 (1986). The movant can discharge this burden by pointing out the absence of evidence supporting one or more essential elements of the nonmoving party's claim, "since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Id. at 323.

Once the movant has carried its burden under Rule 56(a), the nonmoving party must identify evidence in the record that creates a genuine dispute as to each of the challenged elements of its case. Id. at 324; see also Fed. R. Civ. P. 56(c) ("A party asserting that a fact . . . is genuinely disputed must support the assertion by . . . citing to particular parts of materials in the record . . . ."). "Unsubstantiated assertions of an actual dispute will not suffice." Thomas v. Price, 975 F.2d 231, 235

8

(5th Cir. 1992).   If the evidence identified could not lead a rational trier of fact to find in favor of the nonmoving party as to each essential element of the nonmoving party's case, there is no genuine dispute for trial and summary judgment is appropriate. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587, 597 (1986).

The fact that a non-movant has failed to respond to a motion for summary judgment is not itself a basis for granting the motion; however, when a movant has made a properly supported motion for summary judgment, the non-movant must "'go beyond the pleadings'" and "designate 'specific facts showing that there is a genuine issue for trial.'"   Forsyth v. Barr, 19 F.3d 1527, 1537 (5th Cir. 1994) (quoting Celotex Corp., 477 U.S. at 324); see also Bookman v. Shubzda, 945 F. Supp. 999, 1002 (N.D. Tex. 1996). Although the court must draw all inferences in favor of the party opposing the motion, such party cannot establish a genuine issue of material fact by resting only on the allegations of the pleadings.   Hulsey v. Texas, 929 F.2d 168, 170 (5th Cir. 1991). "It follows that if a plaintiff fails to respond to a properly supported summary judgment motion, she cannot meet her burden of designating specific facts showing that there is a genuine issue for trial."   Bookman, 945 F. Supp. at 1004.   Further, when a non-movant fails to respond to a motion for summary judgment, the

9

court is permitted to accept the movant's evidence as undisputed. See Eversly v. Mbank Dallas, 843 F.2d 172, 174 (5th Cir. 1988); Bookman, 945 F. Supp. at 1002.

V.

Analysis

A.   State Law Claims

Defendant argues that the state law claims asserted by plaintiff are preempted by ERISA. ERISA preempts "any and all State laws insofar as they may now or hereafter relate to any employee benefit plan," subject to certain exceptions not applicable in this case. 29 U.S.C. § 1144(a), (b). Further, the Supreme Court has held that state law claims seeking relief within the civil enforcement provisions of ERISA, 29 U.S.C. § 1132(a), are completely preempted. Metro. Life Ins. Co. v. Taylor, 481 U.S. 58, 67 (1987); see also Arana v. Ochsner Health Plan, 338 F.3d 433, 437 (5th Cir. 2003). Section 1132, titled "Civil Enforcement," authorizes "a participant or beneficiary" to bring a civil action "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan. . . ." 29 U.S.C. § 1132(a)(1)(B). When a claimant seeks relief within the scope of § 1132, such claims are completely preempted. Taylor, 481 U.S. at 66; accord Aetna

10

Health Inc. v. Davila, 542 U.S. 200, 210 (2004).  A plaintiff's
claims fall within the scope of ERISA's civil enforcement
provision if she, (1) "at some point in time, could have brought
[her] claim under ERISA § 502(a)(1)(B)" and (2) "there is no
other independent legal duty that is implicated by a defendant's
actions."  Davila, 542 U.S. at 210.

     Under count one in plaintiff's amended complaint, plaintiff
asserts that defendant breached its contract with plaintiff, or,
alternatively, breached the contract between Mr. Hall and
defendant, by not paying plaintiff the funds of Mr. Hall's Plan
account.  Plaintiff seeks to recover those funds, which she
believes are due to her under the terms of the Plan.  In count
two, plaintiff claims that defendant owed plaintiff a fiduciary
duty under the Plan and that defendant breached that duty by
recognizing Sherry Hall's power of attorney, by failing to
investigate that power of attorney and the revocation of the one
given to plaintiff, and by subsequently failing to pay plaintiff
the Plan benefits.  Plaintiff seeks to have her benefits under
the Plan reinstated and to have defendant enjoined from further
breaches of fiduciary duty.  Count three in plaintiff's amended
complaint is a claim for common law negligence.  Plaintiff
asserts that defendant owed plaintiff a duty of reasonable care
in administrating the benefits under the Plan and that defendant

breached that duty by paying the Plan funds to Sherry Hall, causing plaintiff to be damaged because the funds under the plan were not available to pay to plaintiff upon Mr. Hall's death.

Clearly, plaintiff's claims under all three counts relate to Mr. Hall's Plan, which the summary judgment record shows to be an ERISA-regulated employee benefit plan. Further, as plaintiff seeks to "recover benefits due to [her] under the terms of [the] plan, to enforce [her] rights under the terms of the plan, or to clarify [her] rights to future benefits under the terms of the plan," her claims fall within the scope of the civil enforcement provisions of ERISA. 29 U.S.C. § 1132(a)(1)(B). That is, plaintiff could have brought her claims under such provision and she has pointed to no independent legal duty that is implicated by defendant's actions. See Davila, 542 U.S. at 210. Further, plaintiff asserts in her amended complaint that this action arises under ERISA. Therefore, all of plaintiff's state law claims are completely preempted by ERISA, and defendant is entitled to summary judgment on those claims.

B.   Denial of Benefits under 29 U.S.C. § 1132(a)(1)(B)

Under count one in plaintiff's amended complaint, plaintiff seeks to recover the funds that were in Mr. Hall's Plan account because defendant allegedly breached the terms of the Plan by paying those funds to Sherry Hall instead of to plaintiff upon

12

Mr. Hall's death.  By seeking to recover the benefits she believes are due to her under the Plan, plaintiff is apparently invoking 29 U.S.C. § 1132(a)(1)(B) to challenge defendant's denial of benefits.

The court is to review an administrator's decision to deny benefits de novo "[u]nless the terms of the plan give the administrator 'discretionary authority to determine eligibility for benefits or to construe the terms of the plan.'" Atkins v. Bert Bell/Pete Rozelle NFL Player Ret. Plan, 694 F.3d 557, 566 (5th Cir. 2012) (quoting Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 115 (1989)).  "However, if the language of the plan does grant the plan administrator discretionary authority to construe the terms of the plan or determine eligibility for benefits, a plan's eligibility determination must be upheld by a court unless it is found to be an abuse of discretion." Id. (citing Metro. Life Ins. Co. v. Glenn, 554 U.S. 105, 111 (2008)).

The abuse of discretion standard, which in the ERISA context is synonymous with arbitrary and capricious, "requires only that substantial evidence supports the plan fiduciary's decision." Id. "Substantial evidence is 'more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Id. (quoting Ellis v. Liberty Life Assur. Co. of Boston, 394 F.3d 262, 273

13

(5th Cir.2004)). Therefore, "[a] decision is arbitrary only if made without a rational connection between the known facts and the decision or between the found facts and the evidence." Id. (quoting Holland v. Int'l Paper Co. Ret. Plan, 576 F.3d 240, 246 (5th Cir.2009)) (internal quotation marks omitted). One of the factors the court must consider is whether the plan administrator has a conflict of interest where it "both evaluates claims for benefits and pays benefits claims." Truitt v. Unum Life Ins. Co. of Am., 729 F.3d 497, 508 (5th Cir. 2013) (quoting Glenn, 554 at 128) (internal quotation marks omitted). In such circumstances, "[t]he conflict of interest ... should prove more important (perhaps of great importance) where circumstances suggests [sic] a higher likelihood that it affected the benefits decision, including, but not limited to, cases where an insurance company administrator has a history of biased claims administration," but "less important (perhaps to the vanishing point) where the administrator has taken active steps to reduce potential bias and to promote accuracy." Id. at 508-09 (quoting Glenn, 554 U.S. at 117) (internal quotation marks ommited). However, the court's "review of the administrator's decision need not be particularly complex or technical; it need only assure that the administrator's decision fall[s] somewhere on a continuum of reasonableness--even if on the low end." Atkins, 694 F.3d at 566

(quoting <u>Corry v. Liberty Life Assur. Co. of Boston</u>, 499 F.3d
389, 398 (5th Cir.2007)) (internal quotation marks omitted).

The summary judgment record establishes that defendant was
the administrator of the Plan at issue in this case.  Under the
terms of the Plan, defendant was given "the necessary authority
and sole and absolute discretion to carry out . . . determination
of benefits eligibility and the amount of benefits payable to
Participants and Beneficiaries."  App. 16.  Therefore,
defendant's denial of funds to plaintiff must be upheld unless
the court finds the decision to be an abuse of discretion.  The
court finds no such abuse of discretion here.

Plaintiff, as the beneficiary under the Plan, had been
"designated by the Participant to receive any payment from [the
Plan] after the death of a Participant."  App. 10.  Therefore,
under the terms of the Plan, plaintiff was entitled to whatever
funds remained in Mr. Hall's account upon his death.  However,
Mr. Hall, as the participant of the Plan, was entitled under
Article VII(1) of the Plan to withdraw the entire amount of his
account prior to his death, which is what he did, through Sherry
Hall, whom defendant had recognized as Mr. Hall's attorney-in-
fact.  On or about January 21, 2011, Sherry Hall requested that
the money in Mr. Hall's Plan account be sent to her, and a check
dated February 14, 2011, was issued payable to Emmett Hall, Jr.

c/o Sherry Hall in the full amount of Mr. Hall's account, less required withholdings. Accordingly, when Mr. Hall died on April 17, 2011, there were no funds in Mr. Hall's account to disburse to plaintiff.

Plaintiff's challenge to defendant's denial of benefits is based on her contention that defendant breached the terms of the Plan by failing to disburse funds under the Plan to plaintiff upon Mr. Hall's death, after allowing Sherry Hall to withdraw the money in Mr. Hall's account prior to his death. However, defendant's decision to deny plaintiff's claim for benefits was not an abuse of discretion. Clearly, because Mr. Hall's account contained no funds at the time of his death, defendant did not abuse its discretion by disbursing no funds to plaintiff, as the Plan beneficiary. Under the terms of the Plan, plaintiff was entitled to no benefits if there were no funds to be given. Therefore, even taking into consideration any conflict of interest that could have existed because defendant was in a position to both evaluate and pay a claim for benefits, there is no genuine dispute as to any material fact regarding plaintiff's challenge of defendant's denial of benefits, and defendant is entitled to summary judgment on that claim.[3]

---

[3] The court notes that in the section in defendant's motion regarding count one of plaintiff's amended complaint, defendant does not address plaintiff's contention that defendant breached the terms

C.   <u>Breach of Fiduciary Duty under 29 U.S.C. § 1132(a)(3)</u>

In its summary judgment motion, defendant construes plaintiff's claims under counts two and three as claims seeking appropriate equitable relief for breach of fiduciary duty under 29 U.S.C. § 1132(a)(3), which the court finds to be a reasonable approach.  A plan participant or beneficiary may bring suit for breach of fiduciary duty under § 1132(a)(3) to obtain appropriate equitable relief to address violations of ERISA.  <u>See</u> <u>Varity Corp. v. Howe</u>, 516 U.S. 489, 507-15 (1996); <u>McCall v. Burlington N./Santa Fe Co.</u>, 237 F.3d 506, 510 (5th Cir. 2000).  Section 1104(a)(1)(B) of ERISA requires a plan fiduciary to discharge its duties "with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims."  29 U.S.C. § 1104(a).  Defendant argues that its actions in regards to Mr. Hall's Plan met this standard.  The court agrees.

The summary judgment record reveals that defendant received from Mr. Hall two powers of attorney: one naming plaintiff and a later one naming Sherry Hall.  In the amended complaint,

---

of the plan by permitting Sherry Hall to withdraw Mr. Hall's funds prior to his death. However, the court finds that such action, which occurred well before Mr. Hall's death and plaintiff's claim for benefits, is outside the scope of review of defendant's decision to deny payment of benefits to plaintiff. Defendant's handling of the competing powers of attorney is examined in full detail below.

plaintiff alleges, without elaboration, that the power of attorney for Sherry Hall was "obviously fraudulent" and that defendant did not investigate whether Mr. Hall was competent to revoke plaintiff's power of attorney and appoint Sherry Hall in her stead. Am. Compl. at 4. However, despite plaintiff's contention, when defendant became aware of the two powers of attorney, it did begin an investigation. After the power of attorney for Sherry Hall had been received by defendant, Sherry Hall sent documentation to defendant showing that plaintiff had not been paying Mr. Hall's medical or nursing home expenses and that Mr. Hall had consequently been evicted from multiple homes. The letters from the nursing homes indicated that plaintiff had moved Mr. Hall from nursing home to nursing home, promising that Medicare or Medicaid would pay his bills, but then failing to follow through with the qualification process or to pay any of his expenses. Sherry Hall, however, provided proof that since her appointment as Mr. Hall's attorney-in-fact, she had used his savings and pension payments to pay his outstanding medical and nursing home bills. Further, Villanueva was contacted by Det. Anderson of the Fort Worth Police Department, who confirmed that his investigation had revealed that plaintiff had been spending Mr. Hall's pension payments on herself and her daughter, rather than on Mr. Hall's care, leading to Mr. Hall being repeatedly

evicted from nursing homes.  Det. Anderson also indicated that he had visited Mr. Hall and that although he was old and frail, he was not delusional.  Further, a review of the power of attorney given to Sherry Hall shows that although Mr. Hall's signature is not confined to the signature lines, it was properly notarized by a notary public.  Therefore, after completing her investigation, Villanueva, on behalf of defendant, recognized the revocation of the power of attorney for plaintiff and honored the power of attorney for Sherry Hall.

The court finds that the summary judgment evidence establishes that under the circumstances, defendant used "the care, skill, prudence, and diligence" that "a prudent man" would have used "acting in a like capacity and familiar with such matters."  29 U.S.C. § 1104(a).  Plaintiff has failed to produce or identify any evidence in the record to contradict any of defendant's evidence, and has failed to produce or point to any evidence whatsoever that could raise a material issue of fact sufficient to withstand summary judgment.  Therefore, defendant is entitled to summary judgment on plaintiff's claims under 29 U.S.C. § 1132(a)(3).

VI.

<u>Order</u>

Therefore,

The court ORDERS that defendant's motion for summary judgment be, and is hereby, granted, and that all claims and causes of action brought by plaintiff against defendant, be, and are hereby, dismissed with prejudice.

SIGNED February 6, 2014.

JOHN McBRYDE
United States District Judge